[Cite as *State v. Casey*, 2024-Ohio-689.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2023-07-075 |
| | : | O P I N I O N |
| - vs - | | 2/26/2024 |
| | : | |
| KEVIN CASEY, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM HAMILTON MUNICIPAL COURT
Case No. CRB2300958

Laura Gibson, City of Hamilton Prosecuting Attorney, for appellee.

Christopher P. Frederick, for appellant.

**S. POWELL, P.J.**

{¶ 1} Appellant, Kevin Casey, appeals from his conviction in the Hamilton Municipal Court after a jury found him guilty of one count of fourth-degree misdemeanor domestic violence in violation of R.C. 2919.25(C). For the reasons outlined below, we affirm Casey's domestic violence conviction.

**Facts and Procedural History**

**{¶ 2}** On April 17, 2023, a complaint was filed charging Casey with one count of domestic violence in violation of R.C. 2919.25(C), a fourth-degree misdemeanor in accordance with R.C. 2919.25(D)(2). As set forth in the complaint, the charge arose on the afternoon of April 15, 2023, after it was alleged Casey approached the victim, his sister, and said, "I'm going to say one thing and one thing only to you in a nice way." The complaint alleges that Casey then moved toward the victim holding a loaded firearm in his right hand and stated, "I'm tired of this Casey bullshit." The complaint alleges that Casey then raised the firearm and pointed it directly at his sister, which caused her to believe that she was about to be shot, before Casey "ejected a live round that was in the chamber of the firearm." The record indicates this altercation occurred after the victim went to Casey's residence located in Hamilton, Butler County, Ohio with a box of collectible beer steins to give to Casey that had once belonged to their late father.

**{¶ 3}** On June 26, 2023, a one-day jury trial was held on the matter. During trial, the jury heard testimony from both the victim, Casey's sister, and Casey. This included the victim testifying:

> My brother walked into a room, a small room where there was no—he was blocking—blocking the entrance and the only exit out of the room.
>
> He walked in * * * with a gun in his hand, pointed it at me and said, and I'm going to quote him, I am tired of the Casey bullshit. I'm going to tell you one time and one time only. He raised the gun with his right hand. He brought his left hand up, I thought to brace the gun.
>
> And this is where I felt I was going to lose my life, because [Casey's] mental instabilities, he should not have a gun.

**{¶ 4}** Continuing, the victim then testified:

> So he [brought] his hand up. The gun was pointed directly at me. And I saw his other hand come up and I blocked my face and brought my legs up to my core, because I thought he was—I brought my legs up to the core, because if the firearm

- 2 -

would have went off, it wouldn't have directly hit me.

And I heard a bullet hit the ground and I realized the gun did not discharge. So I immediately got out of the room [and ran down the hallway and outside the house and got into my car].

{¶ 5} Thereafter, when asked what the firearm that Casey pointed at her looked like, the victim testified:

I can tell you exactly what the barrel looked like, but I did not see the actual gun itself, because it was so quick. He brought it up from his hip and then there was a hand and I was blocked.

{¶ 6} This is in addition to the victim testifying as to what she was thinking immediately after her brother, Casey, pointed the firearm at her:

He is going to shoot me because, you know, in my mind, you don't raise a firearm unless you intend to use it. * * * And I thought he was going to use it. And when I heard the slide of the gun go back and the bullet hit the ground, and I didn't—I didn't hear that large bang, I had to get out of that room because I was—I just had to get out of that room because I was so scared.

The victim additionally testified that Casey "has in the past, yes, said, yes, I will kill you."

{¶ 7} Following deliberations, the jury returned a verdict finding Casey guilty of the charged domestic violence offense. Upon accepting the jury's guilty verdict, the trial court then immediately proceeded to sentencing and sentenced Casey to a two-year term of community control. The trial court also ordered Casey to serve 30 days in jail, less three days of jail-time credit, with 17 of those days stayed, with conditions. The next day, June 27, 2023, Casey filed a notice of appeal.

**Casey's Appeal and Single Assignment of Error**

{¶ 8} Casey's appeal now properly before this court for decision, Casey has raised a single assignment of error for this court's review. In his single assignment of error, Casey argues that, in light of the evidence presented at trial, the jury's verdict finding

him guilty of fourth-degree misdemeanor domestic violence in violation of R.C. 2919.25(C) was not supported by sufficient evidence and was against the manifest weight of the evidence. We disagree with both of Casey's claims.

*Sufficiency and Manifest Weight Standards of Review*

{¶ 9} "A claim challenging the sufficiency of the evidence invokes a due process concern and raises the question whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, ¶ 165, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Such a challenge "requires a determination as to whether the state has met its burden of production at trial." *State v. Boles*, 12th Dist. Brown No. CA2012-06-012, 2013-Ohio-5202, ¶ 34. "The relevant inquiry is 'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Roper*, 12th Dist. Clermont No. CA2021-05-019, 2022-Ohio-244, ¶ 39, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "'Proof beyond a reasonable doubt' is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of the person's own affairs." R.C. 2901.05(E). "[A] reversal based on insufficient evidence leads to an acquittal that bars a retrial." *State v. Gideon*, 165 Ohio St.3d 156, 2020-Ohio-6961, ¶ 27.

{¶ 10} Unlike the sufficiency-of-the-evidence standard of review, "a manifest-weight-of-the-evidence standard of review applies to the state's burden of persuasion." *State v. Messenger*, 171 Ohio St.3d 227, 2022-Ohio-4562, ¶ 26. "To determine whether a conviction is against the manifest weight of the evidence, this court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the

trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Lewis*, 12th Dist. Butler No. CA2019-07-128, 2020-Ohio-3762, ¶ 18, citing *State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, ¶ 168. But, even then, a determination regarding the witnesses' credibility is primarily for the trier of fact to decide. *State v. Baker*, 12th Dist. Butler No. CA2019-08-146, 2020-Ohio-2882, ¶ 30, citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. Therefore, given that it is primarily the trier of fact who decides witness credibility, this court will overturn a conviction on manifest-weight grounds "only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal." *State v. Kaufhold*, 12th Dist. Butler No. CA2019-09-148, 2020-Ohio-3835, ¶ 10.

*Domestic Violence in Violation of R.C. 2919.25(C)*

{¶ 11} Casey was convicted of one count of fourth-degree misdemeanor domestic violence in violation of R.C. 2919.25(C). Pursuant to that statute, "[n]o person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member." Therefore, given the plain language of the statute, "[f]or a violation of R.C. 2919.25(C), the state must prove that the victim believed the offender would cause him or her imminent physical harm at the time the incident took place." *State v. Marshall*, 12th Dist. Madison No. CA2016-11-031, 2017-Ohio-9269, ¶ 11. This necessarily means that "'the state of mind of the victim is an essential element of [the] crime.'" *State v. Binks*, 12th Dist. Butler No. CA2017-08-118, 2018-Ohio-1570, ¶ 50, quoting *State v. Drake*, 135 Ohio App.3d 507, 510 (12th Dist.1999). "Thus, 'there must be some evidence that a victim either stated, or from other evidence it could be inferred, that the victim thought the accused would cause imminent

physical harm.'"[1]  *State v. Baker*, 12th Dist. Butler No. CA2020-08-086, 2021-Ohio-272, ¶ 13, quoting *Hamilton v. Cameron*, 121 Ohio App.3d 445, 449 (12th Dist.1997).

*Casey's Argument and Analysis*

**{¶ 12}** Casey argues the jury in this case "incorrectly weighed the evidence" and "did not properly execute its fact-finding responsibilities" when considering the testimony and evidence presented at trial.  More specifically, Casey argues the evidence does not support the jury's verdict finding he had "knowingly caused [his sister] to believe he was going to harm her physically."

**{¶ 13}** Casey's argument, however, completely ignores the victim's testimony presented in this case.  This includes, as noted above, the victim's testimony that Casey came into the room where she was sitting while holding a firearm in his right hand and stated, "I am tired of the Casey bullshit.  I'm going to tell you one time and one time only." The victim testified that Casey then pointed the firearm directly at her, thus causing the victim to block her face with her hand, bring her legs up to her core for protection, and think that she was "going to lose [her] life," given her belief that Casey should not be in possession of a firearm given his "mental instabilities."

**{¶ 14}** This is in addition to the victim's testimony regarding her thoughts immediately after Casey pointed the firearm at her.  As previously stated, this includes the victim testifying:

---

1. We note that, although not an issue in this case, the General Assembly has not defined the term "imminent" in the context of R.C. 2919.25(C).  It is therefore the plain and ordinary meaning of the word that controls.  *State v. Turner*, 163 Ohio St.3d 421, 2020-Ohio-6773, ¶ 18 ("[w]hen a term is not defined in the statute, we use the term's plain and ordinary meaning").  The Merriam-Webster online dictionary defines "imminent" as "ready to take place; happening soon."  Other appellate districts have characterized the "imminence" element found in R.C. 2919.25(C) as "near at hand, impending, threatening to occur immediately," *Cincinnati v. Baarlaer*, 115 Ohio App.3d 521, 527 (1st Dist.1996); and "as the belief of the victim that harm would occur immediately or, in the alternative, that the defendant will cause immediate physical harm."  *State v. Fisher*, 197 Ohio App.3d 591, 2011-Ohio-5965, ¶ 17 (2d Dist.), citing *State v. Taylor*, 79 Ohio Misc.2d 82, 85 (M.C.1996).  To the contrary, "[c]ourts have found that the danger posed by a threat is not imminent where the person making the threat has no means of fulfilling the threat at the time it is made."  *State v. Deveny*, 2d Dist. Miami No. 2016-CA-7, 2017-Ohio-560, ¶ 21.

He is going to shoot me because, you know, in my mind, you don't raise a firearm unless you intend to use it. * * * And I thought he was going to use it. And when I heard the slide of the gun go back and the bullet hit the ground, and I didn't—didn't hear that large bang, I had to get out of that room because I was—I just had to get out of that room because I was so scared.

{¶ 15} We find this evidence more than sufficient to support the jury's verdict finding Casey guilty of domestic violence. We also find this evidence, if believed, establishes that Casey's domestic violence conviction was not against the manifest weight of the evidence. This is particularly true in this case when considering the victim also testified that Casey "has in the past, yes, said, yes, I will kill you."

{¶ 16} In so holding, we note the well-established principle that a conviction is not against the manifest weight of the evidence simply because the jury believed the testimony offered by the state. *State v. Ell*, 12th Dist. Fayette No. CA2023-03-006, 2023-Ohio-4583, ¶ 13. We also note the equally well-established principle that a jury is free to believe all, part, or none of the testimony offered by each of the witnesses who appeared before it. *State v. Spencer*, 12th Dist. Warren No. CA2018-08-082, 2019-Ohio-2165, ¶ 27. This includes the testimony both from the victim in this case, Casey's sister, as well as from Casey himself.

{¶ 17} This is in addition to the well-settled principle that the victim's testimony, standing alone, is sufficient to support a domestic violence conviction. *See, e.g., State v. Mansour*, 11th Dist. Trumbull No. CA2011-T-0013, 2011-Ohio-5438, ¶ 23 ("[a]lthough the only evidence presented by the State was [the victim's] testimony, such evidence alone can support a conviction of Domestic Violence"). Therefore, because Casey's domestic violence conviction was supported by sufficient evidence and was not against the manifest weight of the evidence, Casey's single assignment of error lacks merit and is overruled.

**Conclusion**

**{¶ 18}** For the reasons outlined above, and having now overruled Casey's single assignment of error, Casey's appeal challenging his conviction for one count of fourth-degree misdemeanor domestic violence in violation of R.C. 2919.25(C) is denied.

**{¶ 19}** Judgment affirmed.

M. POWELL and BYRNE, JJ., concur.